# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

RUDY MILLS                                                        CIVIL ACTION

VERSUS                                                           No. 08-5168

RAMON AYALA, et al.                                          SECTION I/2

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by defendants, Universal Music

Group, Inc., UMG Manufacturing and Logistics, Inc., Universal Music Latino, VI Music L.L.C.,

and Interscope Geffen A&M Records (collectively referred to herein as the "UMG

defendants").[1] Plaintiff, Rudy Mills, opposes the motion. For the following reasons, the motion

is **GRANTED**.

### BACKGROUND

Between the years 1995 and 1997, plaintiff, a musician in the New Orleans area, wrote

and recorded a song entitled "Gasolina" ("plaintiff's song").[2] Plaintiff printed 2000 compact

discs of this work and he sold or distributed approximately 1500 of those copies.[3] Plaintiff

further contends that plaintiff's song was played on the radio both locally and on the internet.[4]

In July, 2004, Ramon Ayala, known professionally, as "Daddy Yankee," released the

album *Barrio Fino*. One of the songs on that album was also entitled "Gasolina." ("Ayala's

song")[5] On December 17, 2008, plaintiff filed this lawsuit alleging that Ayala's song was so

---

[1] R. Doc. No. 69.
[2] R. Doc. No. 75-6.
[3] R. Doc. No. 66-6, p. 2.
[4] R. Doc. No. 75-4, p. 2.
[5] R. Doc. No. 1, para. 19.

"remarkably similar" to plaintiff's song as to constitute copyright infringement.[6]  The UMG

defendants filed this motion for summary judgment seeking dismissal of plaintiff's claims.[7]

### *STANDARD OF LAW*

Summary judgment is proper when, after reviewing "the pleadings, the discovery and

disclosure materials on file, and any affidavits," the court determines there is no genuine issue of

material fact.  Fed. R. Civ. P. 56(c).  The party seeking summary judgment always bears the

initial responsibility of informing the court of the basis for its motion and identifying those

portions of the record that it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The party seeking summary judgment need

not produce evidence negating the existence of material fact, but need only point out the absence

of evidence supporting the other party's case.  Celotex, 477 U.S. at 323; Fontenot v. Upjohn Co.,

780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the

other party must come forward with specific facts showing that there is a genuine issue of

material fact for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587

(1986).  The non-moving party must carry this burden as to each essential element on which it

bears the burden of proof.  Schaefer v. Gulf Coast Regional Blood Center, 10 F.3d 327, 330 (5th

Cir. 1994).  The showing of a genuine issue is not satisfied by creating "'some metaphysical

doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by

only a 'scintilla' of evidence."  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)

(citations omitted).  Instead, a genuine issue of material fact exists when the "evidence is such

that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty

---

[6] R. Doc. No. 1.
[7] R. Doc. No. 69.

Lobby, Inc., 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. Id. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." Id. at 255; see Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

### *DISCUSSION*

"To establish a claim for copyright infringement, a plaintiff must prove that : (1) he owns a valid copyright[8] and (2) the defendant copied constituent elements of the plaintiff's work that are original." Positive Black Talk, Inc. v. Cash Money Records, 394 F.3d 357, 367 (5th Cir. 2004). The second element, actionable copying, requires two separate inquiries to determine whether a violation has occurred. Bridgmon v. Array Systems Corp., 325 F.3d 572, 576 (5th Cir. 2003). In the first inquiry, the Court looks for factual copying by evaluating "whether the alleged infringer copied, or actually used the copyrighted material in his own work." Id. (citations and quotations omitted). The second inquiry examines "whether substantial similarity exists between the copyrighted work and the allegedly infringing work." Id. (citing Engineering Dynamics, Inc. v. Structural Software, Inc., 26 F.3d 1335, 1343 (5th Cir. 1994)).

I. **Factual Copying**.

Factual copying can be proven by direct or circumstantial evidence. Id. "As direct evidence of copying is rarely available, factual copying may be inferred from (1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity." Positive Black Talk, 394 F.3d at 368 (citing Peel & Co. v. Rug Market, 238 F.3d 391, 394 (5th Cir. 2001)). A defendant can rebut the inference of factual copying, and

---

[8] The UMG defendants argue that plaintiff has not established either element. Because of this Court's ruling with respect to the second element, it renders no opinion as to whether plaintiff owns a valid copyright.

thus escape liability for infringement, if he can prove that he independently created the work.  Id.
(citing Miller v. Universal City Studios, Inc., 650 F.2d 1365, 1375 (5th Cir. 1981).

 "The access element is satisfied if the person who created the allegedly infringing work had a reasonable opportunity to view the copyrighted work."  General Universal Systems Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004).  "A bare possibility will not suffice; neither will a finding of access based on speculation or conjecture."  Peel & Co., 238 F.3d at 394-95.  A plaintiff can survive summary judgment "only if his evidence is *significantly probative* of a *reasonable opportunity* for access."  Armour v. Knowles, 512 F.3d 147, 153 (5th Cir. 2007) (emphasis in original).

Plaintiff does not argue that he has produced any direct evidence tending to show that Ayala had access to plaintiff's song.[9]  Instead, plaintiff argues that his work was so widely distributed as to create a reasonable possibility that Ayala had access to it.  In support of this contention, plaintiff provides declarations suggesting that plaintiff's song was played on WWOZ, a New Orleans radio station that also broadcasts over the internet.[10]  Additionally, plaintiff argues that his song "sold many thousands of copies throughout the country."[11] However, plaintiff's answers to interrogatories reveal that, even by plaintiff's own estimates, fewer than 2000 copies of his CD were ever distributed.[12]  Plaintiff also contends that he gave a copy of his song to the Cuban group Maraca, "which is very influential in both New York and Puerto Rico."[13]

---

[9] See R. Doc. No. 75.
[10] R. Doc. No. 75-4.
[11] R. Doc. No. 75-6.
[12] R. Doc. No. 66-6, p. 2.
[13] R. Doc. No. 75-6.  Plaintiff also contends that "I have learnt [sic] that [Ayala] and his writing partners had visited and played in New Orleans many times while I was playing Gasolina."  Id.  This statement is unsupported by any other evidence before the Court and provides no foundation for the Court to gauge its potential admissibility at trial. In any event, the statement that Ayala may have visited New Orleans while plaintiff performed his song somewhere in the city would not change this Court's opinion with respect to access.

Plaintiff's evidence is insufficient to demonstrate that Ayala may have had access to his music. See Duncan v. Wood, 54 Fed.Appx. 591 (5th Cir. 2002) (per curiam) (holding that evidence showing that a poem was distributed throughout the country in a calendar, a book, and a poetry anthology did not create more than a bare possibility that the defendants had access to the work); Landry v. Atlantic Recording Corp, et al. No. 04-2794, 2007 WL 4302074 (E.D.La. Dec. 4, 2007) (finding that access not shown where defendant printed 5000 albums and the song was played on the radio in Georgia, Louisiana, and Mississippi).

Although plaintiff's evidence tends to show that plaintiff achieved some local popularity through his song, it is mere speculation to assume that Ayala had access to plaintiff's song. Certainly, the fact that plaintiff's song was broadcast over the internet creates the "bare possibility" that Ayala had access to the song. That fact alone, however, does not provide evidence that is "significantly probative" of access. Similarly, the only mechanism provided by plaintiff for how any of the fewer than 2000 CDs that he distributed would have reached Ayala is that he gave a CD to a music group that was influential in Puerto Rico and New York. The Court finds that plaintiff has not established the access prong necessary to prove factual copying.[14]

## II. **Substantial Similarity**.

Even if a plaintiff has established factual copying, a plaintiff must also prove that the copyrighted work and the allegedly infringing work are substantially similar. Positive Black Talk, 394 F.3d at 368 (citing Bridgmon, 325 F.3d at 577). "To determine whether an instance of copying is *legally actionable*, a side-by-side comparison must be made between the original and

---

[14] The Court is aware that "[i]n some cases, factual copying may be proven without a showing of access if the two works are so strikingly similar as to preclude the possibility of independent creation." General Universal Systems, Inc., 379 F.3d at 142. Nevertheless, as explained below in the Court's analysis of substantial similarity, the works are not so similar as to preclude the possibility of independent creation.

the copy to determine whether a layman would view the two works as substantially similar."

Creations Unlimited, Inc., 112 F.3d at 816. "Under the ordinary observer or audience test used in making this factual determination, a layman must detect piracy 'without any aid or suggestion or critical analysis by others. The reaction of the public to the matter should be spontaneous and immediate.'" Peel & Co, Inc., 238 F.3d at 398 (quoting Harold Lloyd Corp v. Witwer, 65 F.2d 1, 18 (9th Cir. 1933)). Although this determination is ordinarily left to the ultimate fact-finder, "summary judgment may be appropriate if the court can conclude, after viewing the evidence and drawing inferences in a manner most favorable to the nonmoving party, that no reasonable juror could find substantial similarity of ideas and expression." Id. at 395.

Before the Court makes its side-by-side comparison, the Court should remove those parts of the work that are not protectable. See Yankee Candle Co., Inc. v. Bridgewater Candle Co., 259 F.3d 25, 34 (1st Cir. 2001); see also Engineering Dynamics, 26 F.3d at 1343 (endorsing the removal of non-protectable content from a computer program prior to conducting the substantial similarity evaluation). Individual words and phrases are not protectable because they are not sufficiently original to be copyrightable. See Emanation, Inc. v. Zomba Recording, Inc., 72 Fed. Appx. 187, 190 (5th Cir. 2003).

The Court has conducted a side-by-side analysis of the two works and it has concluded that no reasonable jury could conclude that the works are substantially similar. The chief similarity between the two songs is the repeated use of the word "gasolina." As noted above, however, the word "gasolina," which means gasoline in Spanish, is not sufficiently original to be protectable. As such, the use of the word in both songs does not, without more, demonstrate substantial similarity.

Other than the repeated use of the word "gasolina," the two songs have very little in common. The songs have different genres, different melodies, and different rhythms. Plaintiff claims that the two songs share a common theme. Plaintiff concedes, however, that his song is about tough economic times for low income people based on rising gas prices while Ayala's song is about a woman's need for a man in a sexual context.[15] An ordinary observer listening to the two works simply cannot conclude that the two songs share common ideas or expressions.

Viewing the evidence and drawing inferences in the manner most favorable to plaintiff, the Court concludes that there is no genuine issue of material fact with respect to whether the songs are substantially or strikingly similar.

### CONCLUSION

For the reasons stated above,[16]

**IT IS ORDERED** that the UMG defendant's motion for summary judgment is **GRANTED**. The pre-trial conference presently set for February 5, 2010, and the trial presently set for March 1, 2010, are **CANCELLED**.

In its opposition, plaintiff's counsel did not address that portion of the UMG defendants' motion concerning sanctions.[17] Accordingly, the Court will reserve ruling on that portion of the motion. Plaintiff is **ORDERED** to file its opposition, if any, to defendant's request for sanctions **no later than February 4, 2010 at 3:00 p.m.** Any reply to plaintiff's opposition shall be filed **no later than February 10, 2010, at 5:00 p.m.**

---

[15] R. Doc. No. 66-6, p. 3.

[16] Because of this Court's ruling that plaintiff did not demonstrate sufficient access to the copyrighted work and that the two works are not substantially similar, the Court does not reach the UMG defendants' other arguments, including their arguments with respect to the statute of limitations and plaintiff's alleged failure to provide proof of copyright registration.

[17] Plaintiff's sole reference to sanctions occurs in the final sentence of his opposition wherein plaintiff stated "We move this court to deny Movant's Motion and its requests for sanctions and fees."

**IT IS FURTHER ORDERED** that the UMG defendant's motion to exclude experts[18] is **DISMISSED AS MOOT**.

New Orleans, Louisiana, January 28, 2010.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[18] R. Doc. No. 74.